**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRENDA COLLINS, | : | CIVIL NO.: 1:20-cv-01206 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction.

This is a social security action brought under 42 U.S.C. § 405(g). The plaintiff, Brenda L. Collins ("Collins"), seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act.

This matter is before us, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find that the Commissioner's final decision does not sufficiently articulate the way the administrative law judge evaluated evidence in this case. We, therefore, cannot determine if the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's

final decision will be remanded so that the administrative law judge can more clearly explain how he arrived at his findings.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 13-1* to *13-19*.[1]   On April 12, 2018, Collins protectively applied[2] for disability insurance benefits, alleging that she has been disabled since March 31, 2017. *Admin. Tr.* at 15. After the Commissioner denied the claim at the initial level of administrative review, Collins requested an administrative hearing, which was held before Administrative Law Judge ("ALJ") Richard E. Guida on June 12, 2019. *Id.*

The ALJ determined that Collins has not been disabled since March 31, 2017, the date of her application, and so he denied her benefits. *Id.* at 27.  Collins appealed the ALJ's decision to the Appeals Council, which denied her request for review on June 2, 2020. *Id.* at 1.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this court.

---

[1] The facts of the case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Collins's claims.

[2] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

Collins filed this action on July 14, 2020. *Doc. 1.*  The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration on December 9, 2020. *Docs. 12-13.*  The parties then filed briefs, *see docs. 15*, *16, 17,* and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).  But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence

if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Collins is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title II of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  To satisfy this requirement, a claimant must have a severe physical

or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).  To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[3]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

---

[3] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Collins met the insured-status requirements through December 31, 2022. *Admin. Tr.* at 17.

Between steps three and four, the ALJ must assess a claimant's RFC. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v.*

*Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

### IV. The ALJ's Decision.

On June 28, 2019, the ALJ denied Collins's claims for benefits. *Admin. Tr.* at 27. First, the ALJ found that Collins meets the insured status requirements of the Social Security Act through December 31, 2022. *Id.* at 17.  At step one of the sequential-evaluation process, the ALJ found that Collins did not engage in substantial gainful activity between March 31, 2017 (the alleged onset date) and June 28, 2019 (the date of the decision). *Id.*

At step two of the sequential-evaluation process, the ALJ found that Collins had the following severe impairments:  status post rectal cancer, Achilles tendonitis, degenerative disc disease, status post cervical spine fusion, fibromyalgia, hypertension, migraine headaches, psoriatic arthritis, right rotator cuff tear, sleep apnea, obesity, depression, and anxiety. *Id.*  The ALJ also identified the following medically determinable non-severe impairments: locking of the thumb, allergic rhinitis, mild intermittent asthma, and GERD. *Id.* at 17-18.

At step three of the sequential-evaluation process, the ALJ found that Collins did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Admin. Tr.* at 18. More specifically, the ALJ discussed Listings 1.02(A), 1.02(B), 1.04, 12.04, 12.06, and 14.09, and he determined that Collins did not meet any of those listings. *Id*. at 18-19. In connection with his discussion of listings 12.04 and 12.06—mental health listings—the ALJ concluded that Collins had moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting and maintaining oneself. *Id*. at 18-19.

Between steps three and four, the ALJ determined that Collins has the RFC to perform "light work," as defined in 20 C.F.R. 404.1567(b), except with:

> occasional postural activities except never climb ladders, ropes, or scaffolds, frequent handling[,] fingering bilaterally, occasional overhead reaching with the right upper extremity, avoid even moderate exposure to dangerous machinery and unprotected heights. She can perform work that is limited to simple and routine tasks, involving only simple, work-related decisions, and with few, if any, work place changes, no production pace work, and only occasional interaction with supervisors, coworkers, and the public.

*Id*. at 19.

At step four of the sequential-evaluation process, the ALJ found that Collins is unable to do her past relevant work as a cardiac monitor technician, which was

actually performed at the light, skilled exertional level; as a nurse assistant, which was actually performed at the heavy, semi-skilled exertional level; as a medical secretary, which was actually performed at the sedentary and light, skilled exertional levels; and as a medical transcriber, which was actually performed at the light, skilled exertional level. *Admin. Tr.* at 26.

At step five of the sequential-evaluation process, considering Collins's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as electrical accessories assembler, office helper, and marker—that exist in significant numbers in the national economy that Collins could perform. *Id*. at 27.  In support of his conclusion, the ALJ relied on the testimony of a vocational expert.  That expert testified that a person with the Collins's RFC could engage in the following three representative occupations: assembler, electrical accessories (DOT # 729.687-010); office helper (DOT # 239.567-010); and marker (DOT # 209.587-034).

In sum, the ALJ concluded that Collins was not disabled from March 31, 2017, through the date of his decision on March 26, 2019. *Id*.  Thus, he denied Collins's claims for disability insurance benefits. *Id*.

## V. Discussion.

Collins raises the following issues in her statement of errors:

(1)    Substantial evidence does not support the ALJ's RFC
        assessment.

(2)    The ALJ failed to properly evaluate Collins's migraines.

*Doc. 15* at 1.  Although these arguments are both framed as challenges to the ALJ's

RFC assessment, they are more accurately construed as challenges to the way the

ALJ evaluated, and articulated his evaluation of, evidence in this case.  Accordingly,

Collins's brief, however, is construed as raising the following issues:

(1)    Whether the ALJ properly evaluated Collins's statements that
        her migraine headaches caused impaired concentration;

(2)    Whether the ALJ properly explained and supported his
        conclusion that Plaintiff could engage in lifting and carrying
        consistent with the definition of light work;

(3)    Whether the ALJ clearly articulated a function-by-function RFC
        assessment; and

(4)    Whether the ALJ properly accounted for Collins's obesity in the
        RFC assessment.

## A. Whether the ALJ properly evaluated Collins's testimony about the limiting effects of her migraines.

The Commissioner's regulations define "symptoms" as the claimant's own

description of his or her impairment. 20 C.F.R. § 404.1502(i).  The ALJ is not only

permitted, but also required, to evaluate a claimant's statements about all symptoms

alleged and must decide whether and to what extent a claimant's description of his

or her limitations may be deemed credible.  In many cases, this determination has a

significant impact upon the outcome of a claimant's application, because the ALJ need only account for those symptoms – and the resulting limitations – that are credibly established when formulating his or her RFC assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  To facilitate this difficult analysis, the Commissioner has devised a two-step process that must be undertaken by the ALJ to evaluate a claimant's statements about his or her symptoms.

First, the ALJ must consider whether there is an underlying medically determinable impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b).  If there is no medically determinable impairment that could reasonably produce the symptom alleged, the symptoms cannot be found to affect the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029.

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms which can be reasonably attributed to a medically determinable impairment. 20 C.F.R. § 404.1529(c)(1).  Symptoms will be determined to reduce a claimant's functional capacity only to the extent that the alleged limitations and restrictions can reasonably be accepted as consistent with objective medical evidence and other evidence of record. 20 C.F.R. § 404.1529(c)(4).  However, an ALJ should not reject statements about the intensity, persistence, or limiting effects

of a symptom solely because it is not substantiated by objective evidence. 20 C.F.R.

§ 404.1529(c)(3). Instead, the ALJ should evaluate the extent to which any

unsubstantiated symptoms can be credited based on the following factors: the

claimant's daily activities; the location, duration, frequency, and intensity of the

claimant's pain or other symptoms; any factor that precipitates or aggravates the

claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects

of any medication the claimant takes or has taken to alleviate his or her pain or other

symptoms; any treatment, other than medication, the claimant receives or has

received for relief of his or her pain or other symptoms; any measures the claimant

uses or has used to relieve his or her pain or other symptoms (e.g., lying flat on your

back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and any

other factors concerning functional limitations and restrictions due to pain or other

symptoms.  20 C.F.R. § 404.1529(c)(3).

An ALJ's findings based on the credibility of a claimant are to be accorded

great weight and deference, since an ALJ is charged with the duty of observing a

witness's demeanor and credibility. *Frazier v. Apfel*, No. 99-CV-715, 2000 WL

288246, at *9 (E.D. Pa. Mar. 7, 2000) (*quoting Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 531 (6th Cir. 1997)).  However, an ALJ is not free to discount a claimant's

statements about his or her symptoms or limitations for no reason or for the wrong

reason. *Rutherford*, 399 F.3d at 554.

In this case, Collins testified that she experiences migraines twice per week, with each migraine lasting for twenty-four hours. *Admin. Tr.* at 44-45. Collins also testified that during a migraine, focusing is a challenge. *Id.* at 44. She has prescribed medication that she can take two times a day during a migraine. Collins reported that the medication helps, but it does take time to work. *Id.* In response to a questionnaire from the Social Security Administration, Collins reported that her headaches interfere with her ability to pay attention. *Id.* at 204.

Although the ALJ acknowledged Collins's migraine headaches while summarizing the medical evidence,[4] the ALJ did not discuss whether nor to what extent migraine headaches interfere with Collins's ability to pay attention nor any other functional restriction resulting from Collins's migraine headaches.

In her supporting brief, Collins argues:

The ALJ determined that Ms. Collins migraine headaches [were] a severe medically determinable impairment. (Tr. 17) The RFC

---

[4] *See Admin. Tr.* at 21 ("She also complained of daily headaches with no improvement with over the counter medications. She acknowledged that she clenches her jaw at night and has not been using her bite guard . . . . [Melissa Wolfe, PA-C,] recommended that the claimant significantly reduce her caffeine intake to help improve her sleep and headaches, as the claimant reported drinking 40oz of Pepsi and at least 20oz of tea per day."); *Id.* at 22 ("[T]he claimant[] reported ongoing daily headaches and migraine headaches once or twice a week with no improvement with the use of Excedrin migraine."); *Id.* at 23 ("[C]laimant had improvement with both tension and migraine headaches with her headache diary showing headaches occurring two to three times per week and of lesser severity than previously.").

assessment, however, did not include any functional restrictions that addressed Ms. Collins migraines. (Tr. 19)

Treatment notes consistently document her complaints of migraine headaches. (Tr. 485, 506, 509, 835, 838, 883, 1047) She received continuing treatment for migraine headaches, including medications like gabapentin and physical therapy. (Tr. 509, 885) In a function report from June 2018, Ms. Collins stated that migraine headaches affected her ability to work. (Tr. 204) Despite the evidence regarding the effects of her headaches, the ALJ failed to properly evaluate Ms. Collins migraine headaches and include appropriate restrictions in the RFC assessment and in the hypothetical question to the vocational expert. The ALJ did not assess frequency with which Ms. Collins migraines occurred and did not include any related functional restrictions in RFC assessment. The ALJ did not determine if the migraines occurred with lesser frequency than Ms. Collins alleged and did not establish how, even if she did suffer migraines but not with the frequency that she alleged, how those migraines would affect ability to work.

The ALJ did not determine the frequency with which Ms. Collins suffered migraines, the length of each migraine, or the methods that Ms. Collins pursued in order to alleviate pain/symptoms of migraines. *Moon v. Colvin*, 763 F.3d 718, 723 (7th Cir. 2014) (The ALJ failed to adequately consider the claimant's migraines in determining the claimant's RFC.); *Heredia v. Colvin*, 2015 WL 3819181 *4 (N.D. Ill. 2015); *Phillips v. Astrue*, 601 F.Supp.2d 1020, 1034 (N.D. Ill. 2009) (ALJ failed to properly assess claimant's headaches and her need to lie down when she experienced a headache). The ALJ's error was not harmless, for, had the ALJ found that, due to migraines, Ms. Collins needed to be away from her workstation or was distracted by severe pain from Collins may have been off-task in excess of the percentage of the workday that employers typically allowed. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (Where the ALJ has erred by failing to build a "logical bridge," the Court looks at the evidence in the record to determine whether it can predict with great confidence what the result on remand will be.)

*Doc. 15* at 14-15.

In response, the Commissioner argues:

14

Here, the ALJ specifically considered Plaintiff's allegation of headaches in reviewing her subjective complaints and cited to her hearing testimony and Function Report that contain her alleged frequency, intensity, and limiting effects of headaches (Tr. 20, referring to Tr. 36-52, 199-208). However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20).

In reviewing the medical evidence, the ALJ acknowledged Plaintiff's reports of headaches to her treatment providers and the consultative examiner (Tr. 21-23). However, the ALJ also observed that a brain MRI showed only a few tiny white matter hyperintensities that could be seen in patients with migraines but could also be normal for her age (Tr. 21, referring to Tr. 390) and that Plaintiff had largely normal objective neurological examination findings (Tr. 21-22). Plaintiff's neurologist documented normal cranial nerves, intact fine finger movements and cerebellar functioning, and symmetrical deep tendon reflexes (Tr. 508). Likewise, Plaintiff was alert and oriented with no deficits of speech or repetition and was able to follow simple, crossed, and complex commands (*Id.*). Her sleep specialist, to whom Plaintiff first reported headaches, also noted that she had normal balance and gait (Tr. 385) and the consultative examiner observed no neurological deficits on examination (Tr. 488). Further, as the ALJ noted, Plaintiff's psychologist observed logical though process and intact associative thinking, short- and long-term memory, attention span, concentration, and judgment (Tr. 21-22, referring to Tr. 463).

The ALJ also considered the longitudinal treatment record showing that Plaintiff's sleep specialist initially advised her to significantly reduce her caffeine intake to help improve both sleep and headaches (Tr. 21) and that her neurologist later prescribed Gabapentin and physical therapy (Tr. 22). While Plaintiff initially reported daily headaches and migraines once or twice a week (Tr. 383, 506), within a few months of starting medication (Gabapentin) and physical therapy, she subsequently reported that they seemed to be working, her headaches had lessened, and she was happy with her current treatment (Tr. 873). Similarly, as the ALJ noted, use of Gabapentin caused no side effects and resulted in improvement with both tension as week as migraine headaches, to the point of having headaches two to three times a week,

15

rather than daily, and to a lesser severity than previously (Tr. 883). Other than increasing her Gabapentin dose because it was helping, Plaintiff's neurologist did not prescribe any other medication, including any abortive medication, for headaches or perform injections.

After comparing Plaintiff's subjective symptoms with regard to her headaches to the medical and other evidence and determining that her allegations were not entirely consistent, the ALJ assessed Plaintiff's RFC in terms of the most she can do on a regular and continuing basis, meaning eight hours a day, 5 days a week. *See* SSR 96-8p. Specifically, the ALJ limited Plaintiff to light work and provided additional limitations, including with regard to exposure to hazards as well as mental limitations to simple, routine tasks and simple work-related decisions; few, if any workplace changes; and no productive pace work (*Id.*). Plaintiff can point to no opinion suggesting greater limitations resulting from her migraines than those adopted by the ALJ.

The ALJ's evaluation of Plaintiff's headaches/migraines and the resulting limitations is sufficient to permit meaningful review. *See Barnhart*, 364 F.3d at 505. Plaintiff has not met her burden of proving that she had greater functional limitations than those already included in the RFC. As substantial evidence supports the ALJ's RFC assessment, it should be affirmed.

*Doc. 16* at 21-24.

In her reply brief, Collins argues: (1) the MRI cited by the Commissioner is not inconsistent with her testimony that migraine pain would result in impaired concentration and being off task; (2) although her pain improved, even with improvement her three weekly migraines may still preclude employment; and (3) the ALJ did not consider the frequency, duration of symptoms, and methods used to control migraine pain before discounting Collins's statements. *Doc. 17* at 3-4.

Collins essentially argues that the ALJ's evaluation of her statements about the limiting effects of her migraine headaches under 20 C.F.R. § 404.1529 and SSR

16-3p compels remand in this case because it is too vague to permit judicial review.

This obligation originates in *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981).  In

*Cotter* the Third Circuit recognized that there is "a particularly acute need for some

explanation by the ALJ when s/he has rejected relevant evidence or when there is

conflicting probative evidence in the record." *Id.*  In defining the parameters of this

obligation, the Circuit explained:

> [i]n our view and examiner's findings should be as comprehensive and
> analytical as feasible and, where appropriate, should include a
> statement of subordinate factual foundations on which ultimate factual
> conclusions are based, so that a reviewing court may know the basis for
> the decision. This is necessary so that the court may properly exercise
> its responsibility under 42 U.S.C. § 405(g) to determine if the
> Secretary's decision is supported by substantial evidence.

*Id.* at 705 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). In its

opinion denying a rehearing in *Cotter*, the Circuit elaborated that "in most cases, a

sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.

There appears to be no dispute that Collins's testimony about the frequency,

duration, and limiting effects of her headaches is relevant. During the ALJ's

explanation of the RFC determination, however, the ALJ makes *only* the following

statements with regard to Collins's migraine headaches:

> "[Collins] complained of daily headaches with no improvement with
> over the counter medications. She acknowledged that she clenches her
> jaw at night and has not been using her bite guard . . . . [Melissa Wolfe,
> PA-C,] recommended that the claimant significantly reduce her
> caffeine intake to help improve her sleep and headaches, as the claimant
> reported drinking 40oz of Pepsi and at least 20oz of tea per day."), 22

17

*Admin. Tr.* at 21.  The ALJ stated that Collins "reported ongoing daily headaches and migraine headaches once or twice a week with no improvement with the use of Excedrin migraine." *Id.* at 22.

> [Collins] had improvement with both tension and migraine headaches with her headache diary showing headaches occurring two to three times per week and of lesser severity than previously . . . . [Dr. Kozochonok] recommended that [Collins] increase gabapentin to 300mg three times daily, continue to keep a headache diary, stay well-hydrated, maintain a regular sleep schedule, and weight loss and regular physical activities (Exhibit 31F)."

*Id.* at 23.  The ALJ also noted that Jean Santo, MD, "noted [Collins's] complaints of chronic neck pain in addition to shoulder pain, headaches . . . ." *Id.*  Collins underwent an MRI related to her migraine headaches, which the ALJ summarized thusly:  "The claimant's February 28, 2018 brain MRI showed a few tiny T2/FLAIR white matter hyperintensities, which can be consistent with migraines versus normal for age.  There was no evidence of acute ischemia and no abnormal enhancement (Exhibits 7F and 31F)." *Id*. at 21.

The ALJ made no other observations or findings related to Collins's migraine headaches or their interference with Collins's ability to pay attention. With regard to Collins's migraine headaches, the ALJ "summarized the record evidence and then concluded, without any real explanation, that this evidence supported the RFC." *Koshir v. Kijakazi*, No. CV 20-1441, 2022 WL 992529, at *4 (W.D. Pa. Mar. 31, 2022).  The ALJ may have met his duty to survey the medical evidence. *Titterington*

18

*v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("Surveying the medical evidence to craft an RFC is part of the ALJ's duties."). But the ALJ has a further duty to provide an explanation of how the evidence serves as the basis for his RFC determination.[5] "[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." *Koshir*, 2022 WL 992529, at *4 (quoting *Fargnoli*, 247 F.3d at 41 (quoting *Cotter*, 642 F.2d at 705)) (internal quotation marks omitted). In the absence of this explanation, this Court is unable to determine how the ALJ evaluated the evidence of Collins's migraine headaches and any lack of focus they caused and how the headaches factored into the RFC determination made by the ALJ.

This Court cannot find the absence of explanation harmless because the absence leaves the Court unable to review the decision. This Court cannot make

---

[5] *See Fargnoli*, 247 F.3d at 41 (quoting *Cotter*, 642 F.2d at 704) (An RFC determination must "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.' "); S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."); *Koshir*, 2022 WL 992529, at *6 (quoting *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citation omitted)) ("[T]he Court is unable to review the ALJ's findings where the ALJ failed to 'build an accurate and logical bridge between the evidence and the result.'").

assumptions about how and why the ALJ decided the RFC; "it is not the role of the Court to look at the evidence and determine whether it would lead to the conclusions to which the ALJ came." *Koshir*, 2022 WL 992529, at *6 (citing *Fargnoli*, 247 F.3d at 44 n.7 ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting *SEC v. Chenery Corporation*, 318 U.S. 80, 87 (1943))).

If the ALJ failed to consider Collins's migraine headaches or the lack of focus Collins has alleged her headaches to cause, proper consideration of the headaches and lack of focus may have caused a lack of significant numbers of jobs which Collins is able to do. In her brief, Defendant states:   "[T]he ALJ noted, use of Gabapentin caused no side effects and resulted in improvement with both tension as week as migraine headaches, to the point of having headaches two to three times a week, rather than daily, and to a lesser severity than previously." *Doc. 16* at 23. Collins testified that she experiences migraines twice per week, with each migraine lasting for twenty-four hours. *Admin. Tr.* at 44-45.  If the ALJ were to have found Collins's migraine headaches to distract her from work and to occur, as Collins alleges, twice per week for twenty-four hours each time, the ALJ's findings would indicate that Collins might be distracted as much as 40% of a work week.[6]

---

[6] This Court does not decide whether Collins's migraines would occur on workdays but does estimate this percentage by assuming five eight-hour workdays each week.

At the administrative hearing, the vocational expert testified that the maximum off-task behavior from an employee a typical employer will tolerate is fifteen percent, or nine minutes per hour, of a workday. *Admin. Tr.* at 58. When questioned further about whether an employee could maintain a job if the employee would be off task more than fifteen percent or need extra absences, the vocational expert testified that, for such a person, there would be "no work, no jobs." *Id.*

Here, if the ALJ were to have credited Collins's assertions that her migraine headaches occur twice a week and distract her from work, the ALJ may have found Collins could not work. Because the ALJ did not provide an explanation of his consideration of the evidence related to Collins's headaches for the RFC determination, this Court cannot review it.

Because the Commissioner's final decision lacks sufficient explanation of the RFC determination, this Court cannot determine whether substantial evidence supports the ALJ's RFC assessment nor whether the ALJ failed to properly evaluate Collins's migraines. Accordingly, the Commissioner's final decision will be remanded so that the ALJ can more clearly explain how he arrived at his findings.

## VI. Conclusion.

For the foregoing reasons, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's failure to adequately analyze, or articulate the reasons for finding unpersuasive, the evidence of Collins's migraines and alleged consequential lack of focus, we will not address Collins's remaining claims of error. "Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), report and recommendation adopted, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020). "A remand may produce different results on these claims, making discussion of them moot." *Id.*

An appropriate order follows.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge